UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,  )
                           )
        Plaintiff,         )          No. 6:25-CR-66-REW-HAI-1
                           )
v.                         )
                           )          OPINION & ORDER
SHELIA A. CLEMONS,         )
                           )
        Defendant.         )

*** *** *** ***

Defendant Shelia Clemons pleaded guilty to the sole count of the Indictment charging her with arson in violation of 18 U.S.C. § 844(i). *See* DE 12 (Indictment); DE 35 (Plea Agreement); DE 37 (Recommendation); DE 40 (Order Adopting Recommendation). She was on bond pre-trial, *see* DE 11, and Judge Ingram maintained that status pending plea acceptance by this Court. *See* DE 36 (Minute Entry: Rearraignment). In accepting Clemons's guilty plea, the Court ordered the parties to brief the issue of detention pending sentencing, particularly mandatory detention under 18 U.S.C. § 3143(a)(2), and allowed each party to respond to the other side's filing. *See* DE 40 at 2. Clemons and the Government submitted briefs, *see* DE 42 (Clemons's Brief); DE 43 (Government's Brief), and the Government responded to Clemons's brief, *see* DE 44 (Government Response). The matter is ripe for review. Clemons awaits imposition of sentencing for maliciously destroying by fire a building in Jackson County. She burned Lincoln Hall, a structure used in interstate commerce in the activities of an area private school.

### a. Mandatory Detention Under 18 U.S.C. § 3143

The analysis begins with 18 U.S.C. § 3143(a)(2). That section typically mandates detention of a person awaiting imposition or execution of sentence who has been found guilty of an offense

in a case described in 18 U.S.C. § 3142(f)(1)(A)-(C).  The rare exception found in § 3143(a)(2)(A) does not apply, as Clemons concedes.[1]  *See* 18 U.S.C. § 3143(a)(2); DE 42 at 1.  Pertinent here, § 3142(f)(1)(A) includes a case that involves a qualifying "crime of violence" as defined in § 3156(a)(4).  *See id.* § 3142(f)(1)(A).

The post-plea steps begin with 18 U.S.C. § 3143(a)(1).  That section provides that, except as provided in § 3143(a)(2), a defendant who has been found guilty and is awaiting sentencing must be detained unless the court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to others or the community if released.  *See* 18 U.S.C. § 3143(a)(1) (assuming the Guidelines do not recommend a prison term).  However, § 3143(a)(2) usually mandates that defendant's detention pending sentencing if the person has been found guilty of an offense in a case described in 18 U.S.C. § 3142(f)(1)(A)-(C).[2]  *See* 18 U.S.C. § 3143(a)(2).

Relevantly, § 3142(f)(1)(A) includes within the mandate a case that involves a "crime of violence" as defined in § 3156(a)(4).  *See id.* § 3142(f)(1)(A).  Both parties agree that the outcome hinges on qualification under this case category.  The Court therefore must determine whether arson under 18 U.S.C. § 844(i), which carries up to a 20-year prison term, constitutes a crime of violence as defined in 18 U.S.C. § 3156(a)(4) under the categorical approach.[3]  Under the

---

[1] Clemons would, on this record, meet the (a)(2)(B) gate.

[2] As with (a)(1), one exception focuses on likely incarceration, turning on whether the Government has recommended no prison sentence.  The other involves likely relief on a post-trial motion.  The triggers do not apply to Clemons.  Section 844(i) carries a mandatory 5-year minimum sentence, and Clemons pleaded guilty in the case.

[3] The Sixth Circuit has not explicitly held that the categorical approach applies for determining whether an offense is a crime of violence under the BRA.  The Sixth Circuit has applied the categorical approach in determining qualification as a crime of violence under other statutory and regulatory schemes.  *See, e.g.*, *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020) (applying the categorical approach to determine whether arson qualifies as a crime of violence under 18 U.S.C § 924(c)(3)(A)); *United States v. Adams*, 51 F. App'x 507, 508 (6th Cir. 2002) (applying categorical approach in determining whether an offense is a crime of violence in the 4B1.2 context); *United States v. Habern*, No. 24-5573, 2025 WL 1743198, at *2 (6th Cir. June 24, 2025) (applying the categorical approach in analyzing crime of violence qualification under the Guidelines elements clause); *United States v. Mekediak*, 510 F. App'x 348, 353

categorical approach, "a court does not consider the facts of an individual's crime as he actually committed it[,]" *see Pereida v. Wilkinson*, 141 S. Ct. 754, 762 (2021), but instead "look[s] only to the statutory definitions of the…offense[,]" *see Taylor v. United States*, 110 S. Ct. 2143, 2159 (1990).

> The Bail Reform Act ("BRA") defines a crime of violence, apt for this case, as:
>
> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense[.]

18 U.S.C. § 3156(a)(4)(A)-(B).  Clemons argues that arson under § 844(i) is not a crime of violence under subsection (A), the elements clause.  A person commits arson in violation of § 844(i) when he or she, in relevant part, "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property[.]"  18 U.S.C. § 844(i) (adding, for jurisdiction, that the, *e.g.*, building was "used in interstate . . . commerce or in any activity affecting interstate . . . commerce").  Clemons contends that arson does not categorically qualify as a "crime of violence" because that definition requires, as a match, the use, attempted use, or threatened use of force against the person or property *of another*, *see* 18 U.S.C. § 3156(4)(A) (emphasis added), but arson under § 844(i) textually encompasses the malicious damage or destruction, by means of fire or an explosive, of one's *own* property.  *See* DE 42 at 4-5; *United States v. Laton*, 352 F.3d 286, 298 n.11 (6th Cir. 2003) ("The application of

---

(6th Cir. 2013) (analyzing the now-defunct portion of the ACCA residual clause under a categorical approach), *overruled by Johnson v. United States*, 135 S. Ct. 2551 (2015).  District courts in this circuit have used the categorical approach in the BRA context.  *See United States v. Haley*, No. 2:23-cr-20191-MSN-cgc, 2024, WL 4906517 n.2 (W.D. Tenn. Nov. 27, 2024).  Other circuits have explicitly applied the approach under § 3156.  *See United States, Ingle*, 454 F.3d 1082, 1084-85 (10th Cir. 2006).  The parties invoke categorical analysis, and the Court employs it.

844(i) does not turn on the identity of the arsonist."). The Government concedes this overbreadth argument on the elements clause. *See* DE 44 at 1.

Given that concession, the Court will not pursue further the elements clause analysis as a basis for decision. Clemons makes a separate argument regarding the scope of mens rea. She contends that arson, which requires that the defendant have acted "maliciously," could be a crime accomplished by "reckless" behavior. Under the plurality opinion in *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021), reckless use of physical force would not qualify under the relevant elements clause. *See also United States v. Tooley*, 155 F.4th 883, 888 (6th Cir. 2025) (holding that, under the *Borden* framework, "wantonly" as used in Kentucky's second-degree manslaughter statute is "functionally equivalent to recklessness…and cannot support a sentencing enhancement for a crime of violence.").

A full exposition of the challenging mens rea question is beyond this Opinion, but the Court does make a few important application points. Defendant assumes that malicious action would include reckless action, as those terms are commonly defined. Under § 844(i), a defendant acts maliciously when acting "intentionally or with willful disregard of the likelihood that damage or injury would result from his or her acts." *See United States v. Dye*, 538 F. App'x 654, 660 n.2 (6th Cir. 2013). The Court has considered several cases refining the pertinent culpability ladder, including *Borden*. *See Borden*, 141 S. Ct. at 1825; *United States v. Gullet*, 75 F.3d 941, 948 (4th Cir. 1996); *Dye*, 538 F. App'x at 660; *Togonon v. Garland*, 23 F.4th 876, 878 (9th Cir. 2022) ("At common law, a defendant committed arson . . . by maliciously burning the dwelling house of another . . . A defendant acted maliciously by intentionally burning the dwelling house of another or by doing so wantonly, meaning 'intentionally doing an act (e.g., starting a fire []) under circumstances in which the act created a very high risk of burning the dwelling house of another,

4

where the actor knew of that risk but nonetheless engaged in the risk-taking act.'") (citing and quoting 3 Wayne R. LaFave, Substantive Criminal Law § 21.3, at 314 (3d ed. 2018); *Id.* § 21.3(e), at 329-30; Rollin M. Perkins & Ronald N. Boyce, Criminal Law 859–60 (3d ed. 1982); John Poulos, The Metamorphosis of the Law of Arson, 51 Mo. L. Rev. 295, 322 (1986)); *United States v. Lung'aho*, 72 F.4th 845, 849 (8th Cir. 2023); *United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022) (rejecting *Borden* challenge to mental state "more culpable than recklessness").

The Court sees the mens rea for arson as above *Borden*'s recklessness formulation, based, as *Lung'aho* noted, on a sliding probability scale. *See Lung'aho*, 72 F.4th at 849 ("To sum up, the differences between recklessness, malice, and knowledge come down to a sliding scale of probabilities. From 'substantial and unjustified' (recklessness)…to a 'likelihood' (malice)…to 'practical certainty' (knowledge)…each requires more risk and culpability than the last.") (internal citations omitted). Simply put, the arsonist acts, at the *lowest* culpability point, with knowledge of a resulting very high risk of destruction by burning. This, sounding in wantonness (or more), exceeds mere criminal recklessness and is far closer to the "knowing" behavior that meets the use of physical force requirements. *Borden* deemed recklessness to be conscious disregard of "a substantial and unjustifiable risk." *See Borden*, at 1824 (stating also, "That risk need not come *anywhere close to a likelihood*.") (emphasis added). Malice is different—the risk there categorically exceeds being substantial and rather, as noted in the cases, represents a "very high risk" and indeed a "likelihood." *See id.* Resolution of that categorical aspect will wait for another day and case, but, given the comparative degree of risk knowingly created and consciously disregarded, one acting maliciously has greater culpability than one acting recklessly.

Conceding the categorical approach on the elements clause, the Government argues that arson qualifies as a crime of violence under the BRA's residual clause, 18 U.S.C. § 3156(a)(4)(B).

*See* DE 43 at 1-2; DE 44 at 1.  Before reaching the merits of this argument, the Court first addresses Clemons's threshold argument,[4] that the Court should find the residual clause unconstitutional because the clause is "similar, and in some cases identical, to the residual clauses struck down by the United States Supreme Court as unconstitutionally vague."  *See* DE 42 at 5.  In support, Clemons cites the following Supreme Court cases that struck down residual clauses on vagueness grounds: *Johnson*, 135 S. Ct. at 2563 (striking down the portion of the ACCA's residual clause reading, "or otherwise involves conduct that presents a serious potential risk of physical injury to another" as unconstitutionally vague); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018) (striking down 18 U.S.C. §16(b) as unconstitutionally vague); *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (striking down 18 U.S.C. § 924(c)(3)(B) as unconstitutionally vague)).

Distinguishing this trilogy from the BRA's residual clause, the Government first cites *United States v. Watkins*, where the Second Circuit declined to extend the void-for-vagueness doctrine to the BRA.  940 F.3d 152, 159-61 (2d Cir. 2019).  There, the Second Circuit noted that the trilogy "invalidated residual clauses appearing in statutes that either: (1) establish new criminal offenses; or (2) impose severe or enhanced penalties."  *Id.* at 159.  The Court found that whether the Government was entitled to a pretrial detention hearing under § 3142(f)(1) did not trigger either of the two recognized categories, so the doctrine did not extend.  *See id.* at 161.  The Government also cites *Beckles v. United States*, where the Supreme Court upheld the residual clause in the prior career offender's "crime of violence" definition against a *Johnson* challenge.  The Supreme Court assessed the advisory nature of  the Sentencing Guidelines and determined that the key vagueness concerns—providing notice and preventing arbitrary enforcement—were not implicated.  137 S.

---

[4] Really, Clemons's only response on the clause.

Ct. 886, 894-95 (2017).  The residual clause there neither defined a crime nor set a sentence, and the Court found the scope of the clause sufficient to withstand due process scrutiny.  *See id.*

Clemons attempts to distinguish her case from *Watkins* and *Beckles*.  First, as to *Beckles*, Clemons notes that the BRA, unlike the Guidelines, is binding as a detention mandate.  *See* DE 42 at 6.  Second, she asserts that the *Watkins* holding was strictly in the context of the Government's entitlement to a pretrial detention hearing under the BRA, which she argues does not raise the same due process concerns as mandatory detention pending sentencing.  *See id.*  Clemons does not elaborate on this second point.

In the Court's view, the BRA's residual clause survives the vagueness challenge, in this case and context.  The nature of the enactment matters, as the Supreme Court often has noted.  *See Watkins*, 940 F.3d at 159 (noting factors in vagueness tolerance).  Here, what is at issue is Clemons's status between her plea and her sentence.  Pre-trial innocence and release presumptions are gone, with the fact of conviction, and Defendant awaits sentencing.  Given the arson conviction under § 844(i), Clemons faces a sentence of "not less than 5 and not more than 20 years[.]"  Thus, by law, she will be incarcerated.

That narrow window certainly is a liberty interest, but the BRA residual clause is not defining a crime or setting a punishment, the two foci in the vagueness cases.  Rather, the clause simply is speaking to when a person likely (or here, required) to be incarcerated is remanded after adjudication of guilt.  *Beckles* approved like language in the Guidelines context, where qualification as a § 4B1.2(a) "crime of violence" often signals career offender status and a resulting significant spike in the consequent Guideline criminal history category and incarceration range, under operation of Chapters 4 and 5.  The Guidelines are not mandatory, but they are a benchmark and starting point; they have obvious influence in the sentencing outcome.  *Watkins* approved the

7

clause in its role opening the door to a hearing, but that same clause in the BRA also would govern the rebuttable presumption of danger-based detention triggered, in certain cases, by a crime of violence. *See* 18 U.S.C. § 3142(e)(2). If the residual clause bears enough clarity to constitutionally guide courts in those weighty applications, it also has enough to resolve the status of a defendant in the limited space between guilt and sentencing, particularly in a case with a mandatory minimum carceral term in the offing. *See also United States v. Haley*, 2024 WL 4906517, at *4 (W.D. Tenn. Nov. 27, 2024) (deeming clause valid despite *Johnson* and the other vagueness cases).[5] The BRA largely focuses on risks. Congress's sorting, based on offense characteristics and crime gravity, deserves recognition in the Court's post-adjudication detention analysis.

Because the Court finds that the residual clause of the Bail Reform Act is not unconstitutionally vague, the Court must now determine whether arson under § 844(i) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing" the arson. *See* 18 U.S.C. § 3156(a)(4)(B). In arguing that it does, the Government first points to *United States v. Adams*. In *Adams*, the Sixth Circuit held that arson was a crime of violence under the since-revised residual clause of U.S.S.G. § 4B1.2 because arson, tracking the Guidelines text, "involved conduct posing a serious risk of physical injury to another." *See Adams*, 51 F. App'x at 508.

However, the former Guidelines residual clause is different from the BRA residual clause. The Guidelines residual clause required only that the offense "involve conduct posing a serious risk of physical injury to another," a comparatively broader scope. *Adams* found it met, as to arson, because "[n]ot only might the targeted building be occupied regardless of whether it is a dwelling, but a serious potential risk of physical injury to others exists because the fire could harm

---

[5] And as Clemons's § 3145(c) request illustrates, the BRA reserves a channel of discretion when there are clearly shown exceptional reasons why detention is not appropriate.

firefighters and onlookers and could spread to occupied structures." *Id.* The BRA's residual clause, on the other hand, requires that the offense naturally "involves a substantial risk that physical force against the person or property of another *may be used* in the course of committing the offense[.]" 18 U.S.C. § 3156(a)(4)(B) (emphasis added). The BRA's language focuses on risk of physical force use rather than mere risk of injury.

The Government's foremost case on this point within the BRA realm is *United States v. Marzullo*, 780 F. Supp. 658, 663 (W.D. Mo. 1991). The Court's own research reveals little direct caselaw on the issue within the BRA context, but the cases largely lead back to *Marzullo*.[6] In finding that arson is a crime of violence under the BRA, that court interpreted and analyzed § 3156(a)(4)(B) in the way the Government now suggests:

> It seems beyond question that the application of fire or explosives to a building in an attempt to destroy or damage it is tantamount to applying physical force against that property. Defendants argue that since the building in question was "owned" by Defendant Marzullo it was not "property of another" as required by the statute. Looking to the "nature" of the crime of arson, however, it seems clear that the offense ordinarily carries with it a substantial risk to the "property of another." The usual fact is that arson for profit committed by the "owner" risks more than his or her own property. First, to the degree that lenders or vendors of the "owner" have security interest in the building or its contents, their property must be at risk. Additionally, any items left in the store on a consignment basis amount to "property of another" that is put at risk. Finally, with an arson fire, there is always the risk that it will spread beyond the intended target and involve surrounding property or properties.
>
> It is also the case, that arson routinely involves a substantial risk to the "person of another." As noted above, the risk that the fire will impinge upon other structures may include the spread to occupied structures, putting the "person of another" at risk. There is also the risk that firefighting personnel or investigative personnel will be injured by physical force while extinguishing the fire or investigating the fire scene. Accordingly, after examination of the statutory language, this Court concludes that arson is a "crime of violence" as defined by 18 U.S.C. § 3156.

---

[6] *See, e.g., United States v. Walker*, No. 23-cr-141-JFH, 2023 WL 3197712, at *2 (N.D. Okla. May 2, 2023); *United States v. Mitchell*, 23 F.3d 1, 2 n. 3 (1st Cir. 1994) (per curiam); *United States v. Shaker*, 665 F.Supp. 698, 702 n. 4 (N.D. Ind. 1987); *United States v. Chippewa*, No. 21-CR-337-JFH, 2023 WL 1778339, at *2 (N.D. Okla. Feb. 6, 2023).

9

*Marzullo*, 780 F. Supp. at 663.  Thus, the possibility of ultimate injury or consequence to the person or property of another drove the analysis.  This framing of the inquiry essentially transforms the BRA's residual clause into the former Guidelines residual clause: did the conduct pose a serious potential risk of physical injury to the person or property of another?

However, the Court, observing the plain text of the statute, views the proper inquiry under § 3156(a)(4)(B) as whether, considering arson by its nature, there is a substantial risk that the perpetrator may use physical force against the person or property of another in the course of committing the offense.  The Supreme Court elucidated how to employ the categorical approach to residual clauses in *James v. United States*, 127 S. Ct. 1586, 1597 (2007), *overruled by Johnson*, 135 S. Ct. at 2563.  The Court views that analysis as proper notwithstanding the *Johnson* holding, as the BRA's residual clause is not, at this juncture and application, considered unconstitutionally vague.  Thus, to determine whether arson is a crime of violence under § 3156(a)(4)(B), the Court must imagine "the conduct encompassed by the offense's elements, in the ordinary case," *James*, 127 S. Ct. at 1589, and decide whether that abstraction "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense[.]" 18 U.S.C. § 3156(a)(4)(B).

The Supreme Court's analysis in *Begay v. United States*, 128 S. Ct. 1581 (2008) (effectively abrogated by *Johnson*), is informative.  In *Begay*, the issue was whether driving under the influence of alcohol was a violent felony under the "violent felony" residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii).  The Court held that driving under the influence falls outside the scope of the ACCA's residual clause (a clause since invalidated).  *See Begay*, 128 S. Ct. at 1588.  The Court reasoned that a "DUI differs from the example crimes—burglary, *arson*, extortion, and crimes involving the use of explosives—in at least one pertinent, and important,

respect. The listed crimes all typically involve purposeful, 'violent,' and 'aggressive' conduct.'" *Id.* at 1586. In explaining the purposes of the ACCA and the risk the defendant presents of future danger, the Supreme Court stated, "crimes involving intentional or purposeful conduct (as in burglary and arson) are different from DUI, a strict-liability crime." *Id.* at 1587. Clearly then, the Supreme Court understood arson as a crime typically involving intentional or purposeful conduct. Therefore, according to *Begay*, it is undeniable that the "ordinary case" of arson involves purposeful conduct. *Begay* may longer pertain, given the fate of the ACCA's residual clause under *Johnson*, but its characterization of arson is telling when it comes to understanding the "nature" of arson. Under *Sanchez-Perez v. Garland*, physical force connotes "violent force—that is, force capable of causing physical pain or injury" or "violent, active crimes." 100 F.4th 693, 698 (6th Cir. 2024) (citing *Johnson v. United States*, 130 S. Ct. 1265, 1270-71 (2010)). Surely, the *Begay* characterization maps with this conception of arson.

Clemons did not extend her mens rea scope argument, discussing *Borden* and *Lung'aho*, to arson's qualification as a crime of violence under § 3156(a)(4)(B). That section, however, also concerns the "use" of physical force against another, seemingly implying the same mens rea requirement as the elements clause. The Court's same comments would apply here.

Still, the proper inquiry is whether the ordinary case of arson, by its nature, involves a substantial risk that physical force may be used against the person or property of another. The Court holds that it does for several reasons. First, the Supreme Court, in *Begay*, plainly recognized that the "typical" case of arson involves purposeful and intentional conduct, sufficient culpability under any reading of *Borden*. Second, if there were any doubt about arson's nature, the violent crime clauses in both the ACCA ("violent felony") and the Guidelines ("crime of violence") explicitly include arson as a qualifying crime. This bolsters the conceptual understanding of arson,

11

in the general or ordinary sense, as a crime typically involving violent force.  *See* 18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. § 4B1.2(a)(2).  Third, a survey of recent Sentencing Guidelines statistics reflects that, year-over-year, the majority of arson cases involves an offense level set by the knowing creation of a substantial risk of death or serious bodily injury.  *See, e.g.*, UNITED STATES SENTENCING COMMISSION, USE OF GUIDELINES AND SPECIFIC OFFENSE CHARACTERISTICS GUIDELINE CALCULATION BASED (2024), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2024/Ch2_Guideline_FY24.pdf [https://perma.cc/49R7-LUV9].  Those stats show that for years 2022 through 2024, of the hundreds of federal arson cases, at least 50% of the matters in each year involved that level of knowing creation of a substantial risk of death or serious bodily injury.  Given the requirement of malice, the data show that the nature of arson surely carries the requisite risk of violent force.  Undoubtedly, arson can occur in ways the BRA might not include within the "crime of violence" purview, such as through the idiosyncratic arsonist burning only his or her own property.  Nevertheless, the Court views the "ordinary case" as one involving, by nature, a substantial risk that physical force against the person or property of another may be used in the course of committing the offense, as was the case here.[7]  *See* 18 U.S.C. § 3156(a)(4)(B).  Therefore, the Court holds that arson is a crime of violence under 18 U.S.C. § 3156(a)(4)(B).

b. **Exception to Mandatory Detention for Exceptional Reasons under 18 U.S.C. § 3145**

Having found that arson under § 844(i) is a crime of violence, Clemons must satisfy the exception provided in 18 U.S.C. § 3145(c) to remain on bond pending sentencing.  That section states, in relevant part:

---

[7] Clemons intentionally set papers on fire inside the window of the building the fire destroyed.  She reached inside the window, late at night, and set fire to papers within the building.  The resulting blaze destroyed the building. *See* DE 1-1 ¶ 26-27; DE 35 (Plea Agreement).

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c). Under this rubric, Clemons must first prove by clear and convincing evidence that she is "not likely to flee or pose a danger to the safety of any other person or the community[.]" 18 U.S.C. § 3143(a)(1). If she can carry this burden, the Court would permit her to remain released pending sentencing on conditions, in accordance with 18 U.S.C. § 3142(c), only if she can clearly show exceptional reasons why her detention would not be appropriate.

Clemons first argues that she is not a flight risk given that she is a lifelong resident of Jackson County, Kentucky, where she currently lives with her mother and near her children and grandchild. *See* DE 42 at 6-7. She also has been out on release since August 19, 2025, and has been in total compliance with those conditions. *See id.* at 7. Clemons argues that she presents no risk of danger to others or the community, evidenced by her ongoing, and so far successful, psychiatric counseling and treatment through New Hope Counseling Recovery, LLC and Kentucky Family Behavioral Health. *See id.*; DE 42-1 ("There are no clinical concerns at the present moment regarding [Clemons]. She remains compliant with always attending the services that she engages in, as well as continuing to be motivated and put forth a cooperative effort to work towards healing from past trauma.").

On this record, the Court finds by clear and convincing evidence that Clemons is not likely to flee or pose a disqualifying danger. Clemons's bond tenure and lifelong residency in Jackson County, where she currently lives with her mother and near her children and grandchild, provide the Court with assurance that she will not flee before sentencing. Additionally, though her crime was reprehensible, targeted, and could easily have resulted in harm to others, Clemons's successful

13

mental health treatment and course since the fire indicate that she does not pose a present risk of danger to others or the community.  The Government does not argue otherwise.

Clemons must also clearly demonstrate exceptional reasons that make detention inappropriate.  "Exceptional reasons exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'"  *United States v. Collins*, 734 F. Supp. 3d 755, 759-60 (S.D. Ohio 2024) (citing *United States v. Walden*, No. 3:10–CR–110–7, 2011 WL 4476641, at \*1 (E.D. Tenn. Sept. 26, 2011)).  To be exceptional, the reason must show that detention would work a "particular injustice."  *United States v. Christman*, 712 F. Supp. 2d 651, 653 (E.D. Ky. 2010).  The determination is a "fact-intensive inquiry that must be made on a case-by-case basis."  *See United States v. Miller*, 568 F. Supp. 2d 764, 774 (E.D. Ky. 2008).  The Court avoids hard and fast rules here, simply noting that the exception appears against a statutory mandate, and the Court must take care to permit continued release only when exceptional reasons clearly make detention inappropriate.  The relief of section 3145 cannot supplant the primacy of the detention mandate.

Clemons offers essentially two reasons why detaining her until sentencing would be inappropriate.  First, due to the critical role she plays in her daughter's and grandchild's lives, her absence would work a major disruption to them.  *See* DE 42 at 8.  Second, mandating detention before sentencing would cause a dramatic interruption in the mental health treatment Clemons is currently receiving.  *See id.*

These circumstances, viewed in isolation or combination, do not present exceptional reasons that would make pre-sentencing detention inappropriate or unjust.  The Court is sympathetic to the effect Clemons's detention will have on her family life and how a pause in mental health treatment might interfere with her progress.  Nevertheless, the hardships offered by

14

Clemons are common to those facing a criminal justice sentence.  Here, they are imminent and inevitable.  "Incarceration regrettably inflicts family hardship on many, if not most, defendants[.]" *United States v. Burnett*, 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999); *see also United States v. Rodriguez*, 50 F. Supp. 2d 717,722 (N.D. Ohio 1999).  Clemons's role as a helpful (not sole) caregiver is not an exceptional reason.  Nor is interference in mental health treatment the type of immediate medical circumstance constituting an exceptional reason, such as a time-sensitive surgery.  *See United States v. Williams*, 903 F. Supp. 2d 292, 302 (M.D. Pa. 2012).  Moreover, Clemons's motion does not argue or demonstrate that she would receive inadequate mental health treatment while in custody.  *See United States v. Varney*, 2013 WL 2406256, at *1 (E.D. Ky. May 31, 2013).  The interruption in mental health treatment is not exceptional.  Many in the population seen and sentenced by the Court have mental health needs, and ongoing treatment simply does not, as pertinent to custody, reach exceptionality.  In sum, Clemons has not clearly shown exceptional reasons making detention pending sentencing inappropriate.

That said, the Court will, on consideration of all factors, build in a slight (3 week) transitional runway.  This will allow Clemons's family to make needed care adjustments and will allow Clemons and her mental health providers to prepare her for the period between remand and BOP designation, where Clemons will have more predictable and stable access to BOP providers.

### c.  Conclusion

Clemons committed a grave, violent offense.  By law, her period of liberty must be at an end.  Accordingly, the Court **ORDERS** Clemons to self-report to the United States Marshal at the Siler Federal Courthouse in **London, Kentucky by 1:00 p.m., on May 1, 2026**.

This the 10th day of April, 2026.



Signed By:

*Robert E. Wier*

**United States District Judge**